UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 13-cv-74-KSF

KEVIN STANCIL                                                                                    PLAINTIFF

v.                                          **OPINION & ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                                                          DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Kevin Stancil, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.    OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)   If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)   If the claimant is not doing substantial gainful activity, his impairment must be severe before she can be found disabled.

(3)   If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous

> period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.
>
> (5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.    PLAINTIFF'S MEDICAL HISTORY AND THE ADMINISTRATIVE RECORD

Stancil filed this claim for disability insurance benefits on March 23, 2012 [TR 217, 242]. However, he previously filed an application for disability insurance benefits on February 26, 2010 [TR 9]. This claim was denied by a prior hearing decision dated March 5, 2012 [TR 9, 92-108]. In his current application, Stancil claims he became disabled and unable to work on March 12, 2008 due to lower back pain, degenerative disc disease, a bulging disc, psoriatic arthritis, mood disorder, depression, anxiety, and trouble sleeping [TR 246]. On the date of his application, Stancil was thirty-five years old [TR 40]. He has at least a high school education and past relevant work as a mail truck driver, material handler, and truck washer [TR 24, 75, 247].

After his initial claim was denied, Stancil requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 20, 2013 [TR 31-88]. At that time, Stancil testified that his last day of work was March 12, 2008, and that he had to quit working due to back, leg, knee and ankle pain from arthritis, as well as psoriasis and sleep issues [TR 40-42].

Also at the hearing, the ALJ heard testimony from the vocational expert (the "VE"), David Burnhill. He was asked to consider the following hypothetical individual that can:

> lift and carry, push and pull 10 pounds frequently and 20 pounds occasionally; this individual could sit, stand and walk six hours each out of an eight hour work day as needed; this individual needs to change positions every 60 minutes or one hour . . . never climb ramps and stairs and – or ladders or scaffolds; the hypothetical individual can occasionally stoop, kneel, crouch, and crawl; the hypothetical individual should avoid concentrated exposure to work hazards, including unprotected heights and moving mechanical parts; the hypothetical individual should not be required to operate a motor vehicle as part of his job duties; he should avoid concentrated exposure to humidity, extreme cold, and vibration; the hypothetical individual can understand, remember, and carry out simple, two- and three-step commands and maintain attention and concentration for two hour segments; the hypothetical individual can interact with supervisors, coworkers, and the public occasionally; the hypothetical individual can tolerate occasional changes in a routine work setting . . . . .

[TR 76-77]. Based on these hypothetical limitations, and assuming an individual with Stancil's vocations factors, the VE testified that Stancil could not perform his past relevant work, but that he could perform light jobs such as hand packer, floor worker, and garment sorter, as well as sedentary jobs including surveillance system monitor, document preparer, and table worker [TR 77-79]. The VE testified that over 50,000 such positions exist in Kentucky and over 4 million in the national economy [TR 77-79].

After considering all the evidence, the ALJ issued a decision finding Stancil not disabled on March 18, 2013 [TR 9-25]. In reaching his decision, the ALJ first determined that Stancil meets the insured status requirements of the Social Security Act through December 31, 2013 [TR 11]. The ALJ then began his analysis at step one by determining that Stancil has not engaged in substantial gainful activity since March 6, 2012 (the day after the last adjudication even though he had an alleged onset date of March 12, 2008).

At step two, the ALJ found that Stancil suffers from the following severe impairments: psoriatic arthritis; degenerative disc disease of the lumbar spine with L1 radiculopathy; obesity;

4

depression; pain disorder; panic disorder; and varicose veins [TR 11]. Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 13-17]. *See* 20 C.F.R. pt. 404, subpt. p, app'x 1. Next, the ALJ determined Stancil's residual functional capacity ("RFC"). An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Stancil has the RFC to perform the exertional and nonexertional demands of light work, with the following restrictions:

> The claimant can never climb ramps and stairs, or climb ladders and scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and vibration. The claimant can understand, remember, and carry out simple tasks. The claimant is limited to two and three step commands and can maintain attention and concentration for two-hour segments. The claimant can occasionally interact with supervisors, coworkers and the public. The claimant is limited to tolerating few changes in a routine work setting, defined as occasional.

[TR 17]. Based on this RFC finding and the VE's testimony, the ALJ determined at the fourth step that Stancil cannot perform any past relevant work [TR 24].

At the fifth and final step, relying on the testimony of the vocational expert and taking into consideration Stancil's age, educational background, work experience, and RFC, the ALJ found that Stancil could perform a significant number of jobs in the national economy. [TR 24]. As a result, the ALJ concluded that Stancil was not disabled [TR 25].

Stancil subsequently requested review by the Appeals Council [TR 5]. The Appeals Council denied Stancil's request for review on May 23, 2013 [TR 1-3]. He has exhausted his administrative

5

remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

In support of this appeal of the administrative decision, Stancil relies on various medical reports and records. First, he points to the medical records and report from licensed clinical psychologist Brad Adkins, Ph.D., a consultative examiner. Dr. Adkins examined Plaintiff on April 28, 2010, and made the following diagnoses:

| | |
|---|---|
| AXIS I: | Major Depressive Disorder, Single Episode, Severe without Psychotic Features |
| AXIS II: | No Diagnosis |
| AXIS III: | General Medical Condition: arthritis, degenerative disc disease, high blood pressure |
| AXIS IV: | Psychosocial and Environmental Problems: lack of financial income |
| AXIS V: | Current GAF: 45 |

Additionally, he opined that Stancil had a diminished ability to understand, retain, and follow instructions, an impaired ability to perform simple, repetitive tasks, less than average ability to relate to others, including fellow workers and supervisors, and an impaired ability to adapt to the workplace, regarding his ability to tolerate the stress and pressures associated with day to day work activity [TR 313-14]. Dr. Adkins did, however, note that Stancil would have "a fair amount of remediation" in his symptoms with appropriate treatment [TR 313]. Stancil has not provided any evidence that he sought further mental health treatment.

Stancil then points to the medical records of Ira Potter, M.D., who treated Stancil for chronic low back pain, hypertension, osteoarthritis, and hepatic steatosis. On December 27, 2010, Dr. Potter ordered a CT scan of Stancil's lumbar spine, which revealed at L4-5 level right paracentral broad-based disc protrusion resulting in moderate degree of central canal and right-sided foraminal stenosis, and at L3-4 level, mild noncompressive posterior disc bulge [TR 629]. A nerve conduction

6

study performed on January 6, 2011 revealed electrophysiological evidence of bilateral median demyelinative sensory neuropathies across the wrists - left slightly worse than right. [TR 632-35]. On November 9, 2011 and again on January 10, 2012, Dr. Potter diagnosed Stancil with chronic anxiety, recurrent chest pain, depression, dizziness, fatigue, GERD, hypertension-controlled, knee-DJD, chronic low back pain, LS-DJD, LS-radiculitis, severe obesity, OSA, edema, psoriasis, with psoriatic arth worsening, insomnia, and hepatic steaosis [TR 652-54, 352-54].

Then, on April 10, 2012, Dr. Potter noted that Stancil's back pain was gradually worsening [TR 356], and on June 6, 2012, Dr. Potter found Stancil's psoriasis to be worse and involving most areas of his body [TR 361]. However, by August 2012, it was in remission with marked improvement [TR 665-69]. Dr. Potter ordered a sleep study [TR 679-81], which was performed by Dr. R.V. Mettu on October 28, 2012. Dr. Mettu diagnosed Stancil with obstructive sleep apnea, and recommended the use of a BIPAP machine every night and sleep at least 7 to 8 hours per night. He was advised not to drive if he feels sleepy [TR 682-84].

Stancil also points to a RFC form and medical report completed by Dr. Potter on February 15, 2013. On this date, his examination revealed generalized psoriatic skin condition, a long history of chronic back pain, radiating to his hips and increased when bending, lifting and stooping. Dr. Potter found marked tenderness of the left SI joint and lumbrosacral area with restricted range of motion. He noted multiple joint pains involving fingers, ankles, shoulders, knees, hips, and shoulders, as well as bilateral knee pain consistent with generalized joint disease. Dr. Potter also noted that Stancil was anxious and depressed. Finally, Dr. Potter found severe morbid obesity, mild hypertension, mild hepatic steaosis, and mild recurrent headaches. In his RFC report, Dr. Potter opined that Stancil can only occasionally lift 11 to 20 pounds; never lift 21 to 100 pounds, only

occasionally carry 11 to 20 pounds; never carry 21 to 100 pounds. Furthermore, he found that Stancil can only occasionally operate foot controls with his left or right foot, and that he can only occasionally climb stairs and ramps, never climb ladders or scaffolds, occasionally balance, stoop, kneel and crouch, and never crawl. He further opined that Stancil is only able to sit, stand and walk for a short period of time, and is unable to drive for prolonged periods of time. Finally, he opined that these restrictions were expected to last 12 or more continuous months [TR 686-97].

Stancil also points to treatment records from Haider Abbas, M.D., a rheumatologist. On April 30, 2010, Dr. Abbas diagnosed chronic psoriatic arthritis [TR 558]. On July 12, 2011, Dr. Abbas noted that Stancil had gained thirty pounds, his joints were sore, and his skin was becoming very active. He diagnosed psoriatic arthritis and psoriatic lesions and encouraged Stancil to lose weight [TR 566-75]. On follow up on April 5, 2012 and September 17, 2012, Dr. Abbas continued the same diagnoses and added cervicalgia, arthalgias, stiffness, and poor sleep [TR 584-87].

Stancil was seen on December 19 and 20, 2012 at the ARH Family Care for an ear ache, for which he was treated. The examiner also referred Stancil to a vascular surgeon and a rheumatologist for complaints related to his psoriasis. Stancil followed up with Brandon Law, M.D., a vascular surgeon, in January 2013. He noted no edema, but observed prominent varicose veins on the right thigh [TR 621]. Dr. Law diagnosed varicose veins of the lower extremities with other complications, and recommended conservative treatment, including compression stockings [TR 621]

On September 5, 2012, Stancil was examined by Alfred Bradley Adkins, Ph.D., a consultative psychologist. He opined that Stancil suffers from Major Depressive Disorder, Generalized Anxiety Disorder, and Pain Disorder. He assessed a GAF score of 43, and opined that Stancil had a marked impairment in his ability to relate to others, including fellow workers and

8

supervisors. He also opined that Stancil had a marked impairment in his ability to adapt to the workplace and his ability to tolerate the stress and pressures associated with day to day work activity [TR 372-73]. Based on all the above medical evidence, Stancil argues that the ALJ erred in denying his application for disability benefits.

III.   ANALYSIS

On appeal, Stancil contends that he became eligible for benefits on March 12, 2008. However, Stancil has failed to argue any basis for this Court to reopen the previous determination that he was not disabled dated March 5, 2012. Accordingly, the Court lacks jurisdiction to consider Stancil's claim for any time prior to March 6, 2012. *See Califano v. Sanders*, 430 U.S. 99, 107-08 (1977)(no jurisdiction to review refusal to reopen absent a constitutional claim); *Harper v. Secretary of Health & Human Services*, 978 F.2d 260, 262 (6th Cir. 1992)("A refusal to reopen a prior application is not a final decision and may not be reviewed by the courts"); *Blacha v. Secretary of Health & Human Services*, 927 F.2d 228, 231 (6th Cir. 1992)("A court may not review a refusal to reopen an application for benefits absent a constitutional challenge"). Thus, the ALJ did not err in failing to reopen the earlier decision, and this court's jurisdiction is limited to the unadjudicated period beginning on March 6, 2012.

The Court now turns to Stancil's substantive arguments on appeal. While Stancil's Memorandum Brief contains a detailed factual summary, it fails to fully comply with this Court's Standing Scheduling Order, entered in this matter on October 28, 2013 [TR 5], which requires a statement of legal arguments to be presented at the beginning of the motion in a numbered list. Nevertheless, the Court construes Stancil's motion as asserting the following three legal arguments: (1) the record does not support the ALJ's finding that Stancil's sleep apnea was not severe; (2) the

ALJ failed to properly weigh the medical opinion evidence; and (3) the ALJ failed to properly evaluate his credibility. Each of these arguments is discussed more fully below.

Stancil's first argument relates to the ALJ's findings at step two. He argues that the ALJ mistakenly stated that he had not been to a sleep clinic or used a CPAP machine and thus failed to find that his sleep apnea is a severe impairment. This argument fails because the ALJ did not find Stancil not disabled at step two. The ALJ concluded that Stancil had other severe impairments [TR 11]. The fact that the ALJ found other severe impairments but did not include sleep apnea is irrelevant because a failure to find that a particular impairment was severe is not reversible error if the ALJ found other severe impairments. *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *McGlothin v. Commissioner of Social Security*, 2008 WL 4772077, at *6 (6th Cir. Oct. 31, 2008)(noting it became "legally irrelevant" that an ALJ determined some impairments not severe because the ALJ found the claimant had some severe impairments and proceeded to complete the remaining steps of the sequential evaluation process).

Next, Stancil vaguely complains that the ALJ failed to properly weigh the medical evidence. He summarily concludes that "any individual who is suffering from these conditions, as supported by the medical evidence in the record, will not be able to be gainfully employed." [DE #6-2, p. 17]. To the extent that he contends that the ALJ failed to accord proper weight to Dr. Potter, his treating physician, this argument fails. The ALJ gave "little weight" to Dr. Potter's disabling opinion because his opinion was not consistent with his own treatment records or the majority of the other medical records. This Court agrees with the ALJ's decision to discount Dr. Potter's opinion.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than

those of physicians who examine claimants only once." *Walters*, 127 F.3d at 530-31; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

In the Sixth Circuit, however, a treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings, and is consistent with other evidence of record. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 856 (6th Cir. 1990); *see also*, 20 C.F.R. §§ 416.927(b), (d)(2), (3)-(4). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). In other words, the supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and in particular, support the opinion with medical signs and laboratory findings. 20 C.F.R. §§ 416.927(a), (d)(3). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *2 (1996).

In *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004), the Sixth Circuit held that if an ALJ declines to accord controlling weight to a treating physician opinion, the ALJ must give good, specific reasons for the weight accorded the opinion. *Id.* at 544. This is essentially a procedural safeguard, ensuring that a claimant understands the disposition of his case, and that the ALJ applied the treating physician rule so as to provide meaningful judicial review of that application. *Id.* at 544-45.

In this case, Dr. Potter failed to provide sufficient objective medical findings or other evidence to support his opinion, either in the form he completed or in his medical records. *See* 20

C.F.R. § 416.927(c)(3); *Walters*, 127 F.3d at 529-30. While Dr. Potter did diagnose Stancil with a variety of medical conditions, a diagnosis alone says little about the severity of any condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, Dr. Potter's conservative treatment of Plaintiff, and Plaintiff's conservative treatment in general, undermines Dr. Potter's opinion and provides further support for the ALJ's findings. *See* 20 C.F.R. §§ 416.927(c)(1), (c)(2), 416.929(c)(3)(v); *Helm v. Commissioner*, 405 Fed.Appx. 997, 1001 (6th Cir. 2001); *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

Not only does Dr. Potter's opinion fail due to lack of objective medical evidence, it is also inconsistent with the record as a whole. As the ALJ found, other doctors who treated and examined Stancil did not find his physical or mental condition to be as limited as Dr. Potter opines. For example, Dr. Abbas, the treating rheumatologist, documented normal gait, station, sensation, deep tendon reflexes, and coordination [TR 580] with no swelling or tenderness in any of the major joints and normal strength in each joint [TR 582]. His hands and feet also revealed no swelling or tenderness [TR 583]. Similarly, Dr. Law found normal range of motion in the neck and muscloskeletal system [TR 620-21]. Dr. Winkle, the consultative examiner, and Dr. Hernandez, the state agency reviewing physician also contradict Dr. Potter's disabling opinion [TR 317-18, 142].

Here, the ALJ set out good reasons for rejecting Dr. Potter's opinion based on its inconsistency with his own findings and the record as a whole [TR 23-24]. Instead, the ALJ relied heavily on the opinion of Dr. Hernandez. Dr. Hernandez, a state agency consultant, is a highly qualified physician who is an expert in Social Security disability evaluations. *See* 20 C.F.R. § 416.927(e)(2)(i); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). Dr. Hernandez's opinion that Stancil could perform light work is supported by Dr. Potter's and Dr. Winkle's lifting limitations.

13

It is also consistent with Dr. Abbas' finding of normal gait, station, sensation, deep tendon reflexes, coordination [TR 580], no swelling or tenderness in any major joints and normal strength in each joint [TR 582], and no swelling or tenderness in the hands and feet [TR 583]. For these reasons, the ALJ did not err in affording little weight to Dr. Potter's opinion.

Finally, Stancil argues that the ALJ failed to properly evaluate his credibility. The ALJ noted that while the overall record, including records from Dr. Law, Dr. Abbas, and Dr. Potter, revealed normal mood and affect, Stancil alleged severe depression and anxiety. However, as the ALJ found, Stancil did not follow Dr. Adkins' advice regarding further mental health treatment [TR 21]. The ALJ stated that this undermined his credibility [TR 22]. Additionally, the ALJ recounted many of the activities of daily living that Stancil noted in various forms submitted to the Social Security Administration, and found that his participation in these activities contradicted his claims of disability, further undermining his credibility [TR 22]. The ALJ is in the best position to observe the demeanor of a claimant and to evaluate the credibility of their testimony in light of the record. *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1988). Upon review, the Court finds that there is substantial evidence to support the ALJ's credibility determination.

In sum, Stancil has failed to meet his burden of proving that his condition caused more disabling limitations than those found by the ALJ. The ALJ properly considered the relevant evidence and properly analyzed all the evidence in accordance with the sequential evaluation process. As set out above, substantial evidence supports the ALJ's findings, and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #6] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #9] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This April 8, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY